CULPEPPER, Judge.
This is a suit for damages for personal injuries. Plaintiff was operating a motorcycle which was struck in a curve by an automobile driven by defendant, Hollie Smith. The State of Louisiana, through the Department of Transportation and Development, is also made a defendant. Judgment was rendered in favor of plaintiff against only defendant Smith in the sum of $75,000. Plaintiff’s suit against the Department of Highways was dismissed. Plaintiff appeals.
The substantial issue on appeal is whether the highway department was negligent.
Plaintiff was operating his motorcycle in an easterly direction on University Drive, a two-lane, two-way paved highway, in Lake Charles, Louisiana. At approximately the same time, defendant, Hollie Smith, was proceeding in a westerly direction on University Drive. The accident occurred when Smith crossed into plaintiff’s lane of traffic, in an attempt to pass another west bound automobile, and struck plaintiff’s motorcycle head-on.
University Drive has a gradual curve at the scene of the accident. The area of the highway where the accident occurred was not designated as a “no passing zone”, nor were signs posted indicating a curve.
The trial judge correctly held:
“Unquestionably, the negligence of Hollie Peavy Smith was a cause of this accident. A disinterested eye witness, Mrs. Charlotte Kaough, testified that he passed her at a high rate of speed in a ‘no passing’ zone about a quarter of a mile from the accident scene, then pulled back into the proper lane of travel momentarily, only to pull out again to pass a second car when the accident happened. She did not see the collision but saw Ashworth’s body hurdling into the air and down.”
*1018 Plaintiff first contends the department was negligent in failing to mark the highway where the accident occurred as a “no passing zone.” He argues the passing sight distance was less than the 600 feet minimum required by the department’s manual. The department manual sets forth the following pertinent standards under which no passing zones should be established:
“A passing zone at a horizontal . curve is warranted where the sight distance, as defined below, is less than the minimum necessary for safe passing at the prevailing speed of traffic. . Where center lines are installed and a curve warrants a no passing zone, it should be so marked where the sight distance is equal to or less than that listed below for the prevailing off-peak 85 percentile speed:
Minimum Passing Sight 85 Percentile Speed
Distance (Feet) (MPH)
500 30
600 40
800 50
1000 60
1200” 70
Photographs entered into the record show that the section of highway where the accident occurred is a horizontal curve. A speed study conducted by the department found that the 85 percentile speed was 39.9 miles per hour. The minimum sight distance for safe passing at this section of highway, as provided by the department’s manual, is 600 feet. Mr. Richard Flanagan, an expert traffic engineer, testified for the department that the sight distance at the curve where the accident occurred is far in excess of 600 feet. The pictures corroborate this.
Plaintiff’s contention is based on the premise that in determining sight distance in a curve the department must consider the fact that other vehicles on the highway will obstruct the view of a passing motorist. He introduced the testimony of a traffic expert, Mr. Wilson, that if sight obstruction by a preceding vehicle is considered, the sight distance was only 400 feet.
Mr. Flanagan stated the department does not normally consider movable obstructions in determining sight distances. This is reasonable. To require the department to take into consideration moving vehicles in determining minimum sight distances for no passing zones would result in almost all sections of highways being marked as “no passing zones.” The trial judge correctly held the department was not negligent in failing to consider vehicular sight obstructions as a factor in determining whether a no passing zone was required at the curve in question.
Plaintiff next contends the trial judge erred in holding that the only “T” intersection which the department is required to mark as a “no passing zone” is a high speed intersection.
Mr. Flanagan stated that the department’s manual only requires “no passing zones” at high speed “T” intersections. He testified the intersection near the scene of the accident, a short street into a residential area, was not a high speed intersection. The trial judge did not err in finding that a “no passing zone” was not required because of the “T” intersection.
Plaintiff next contends the trial judge erred in failing to hold the Department of Transportation strictly liable for accidents on highways where the roadway was defectively designed or inadequately marked.
In LaBorde v. Louisiana Department of Highways, 300 So.2d 579 (La.App. 3rd Cir. 1974), writ denied, La., 303 So.2d 182, this court set forth the legal responsibility of the department as to highway accidents as follows:
The Department of Highways is not responsible for every accident which occurs on state highways. It is not a guarantor of the safety of travelers thereon, or an insurer against all injury or damage which may result from defects in the highways. The duty of the Department of Highways is only to see that state *1019 highways are reasonably safe for persons exercising ordinary care and reasonable prudence. The department is liable for damages only when it is shown (1) that the hazardous condition complained of was patently or obviously dangerous to a reasonably careful and ordinary prudent driver, and (2) that the department had notice, either actual or constructive, of the existence of the defect and failed within a reasonable time to correct it.” (Emphasis added)
Plaintiffs contention that the department should be held strictly liable for accidents where the roadways are defectively designed or inadequately marked is without merit. Furthermore, the evidence here reveals that the highway where the accident occurred was not defectively designed nor inadequately marked. The expert testimony shows the sight distance at the scene was not below the minimum distance requiring a “no passing zone.” The trial judge did not err in rejecting plaintiff’s contention that the department should be held strictly liable for the accident.
Plaintiff contends last that the award for damages was inadequate.
The trial judge awarded damages in the sum of $75,000. He took into consideration defendant Smith’s inability to pay.
Plaintiff sustained severe injuries as a result of the accident. He suffered a traumatic amputation of his lower left leg at the scene of the accident. He suffered lacerations and multiple fractures over his entire body. He was hospitalized for several months. Three corrective amputations were performed in the hospital. He was fitted with a prosthesis but was never able to use it because of pain and traumatic nerve damage. He continues to suffer pain in his leg because of nerve damage.
In the assessment of the quantum of damages, much discretion is left to the trier of fact. Such awards may be disturbed only if the record clearly reveals an abuse of this “much” discretion. Reck v. Stevens, 373 So.2d 498 (La.1979) and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Although plaintiff suffered damages in excess of $75,000, the trial judge did not abuse his discretion in considering the inability of the defendant Smith to pay. Hurston v. Dufour, 292 So.2d 733 (La.App. 1st Cir. 1974). Defendant Smith was uninsured at the time of the accident. He is a young wage earner. The record amply establishes the award is adequate, considering the inability of Smith to pay.
For the reasons assigned, the judgment appealed is affirmed. Costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.