440 So.2d 769 (1983)
Veronica Bordenave LARSON
v.
John L. HUSKEY, et al.
No. CA-0473.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1983.
*770 Thomas C. Cowan, Christovich & Kearney, New Orleans, for appellee, Highlands Ins. Co.
Ferdinand J. Kleppner, Law Offices of Ferdinand J. Kleppner, Metairie, for plaintiff-appellee Veronica Bordenave Larson.
*771 Robert E. Leake, Jr., Hammett, Leake & Hammett, New Orleans, for defendants-appellants Drake Concrete, and Sentry Ins. Co.
Before SCHOTT, BARRY and KLEES, JJ.
KLEES, Judge.
Defendants, Drake Concrete Company and its insurer, Sentry Insurance Company, appeal a jury verdict awarding damages to plaintiff for injuries sustained by her deceased husband, Lindsay A. Larson, Jr., when he was struck and rolled over by a backing cement truck.
Intervenor, Highlands Insurance Company, the workmen's compensation carrier for Larson's employer, answered the appeal arguing that the district court erred in denying interest due on the principal amount owed to intervenor and awarding the interest to plaintiff.
Plaintiff answered the appeal arguing that the trial court erred in failing to increase the monetary sum awarded plaintiff by the jury.
The issues presented on appeal are:
1. Was Drake's driver negligent?
2. Was there evidence to support a finding that Drake was negligent in the operation of its premises?
3. Was Larson negligent and was the negligence an available defense?
4. Did the District Court err in denying interest due on the principal amount owed intervenor?
5. Did the Trial Court err in failing to increase the monetary sum awarded plaintiff?

FACTS
On February 26, 1976, Lindsay A. Larson, Jr. was employed by Bulk Transport Company and was assigned to deliver cement to Drake Concrete at its ready-mix plant in Belle Chasse, Louisiana. At approximately 7:00 o'clock a.m., Larson arrived at Drake's plant yard, connected his truck to a silo used by Drake as a storage container and loading hopper and began to off-load his cement. Larson stood near his truck during this operation to observe the top of the silo as he had been instructed not to overflow and discharge cement dust into the surrounding area. At this time, a ready-mix concrete truck driven by Johnny Huskey, an employee of Drake Concrete, backed into the driveway used by the ready-mix trucks to get to the loading hopper. As he attempted to maneuver his truck into the narrow space under the hopper, the back part of his truck struck Larson, knocking him to the ground. The truck then rolled over the lower half of Larson's body, crushing him.
Larson sued Huskey, Drake Concrete, and its liability insurer, Sentry Insurance Company, and State Farm Mutual Automobile Insurance Company, Larson's uninsured motorist carrier for the resulting damages. State Farm was dismissed from the suit with prejudice prior to trial.
Highlands Insurance Company as the workmen's compensation carrier for Bulk Transport, Inc., Larson's employer, filed a petition of intervention seeking reimbursement of all present and future sums paid on behalf of Larson.
On May 6, 1980, prior to the trial, Larson died and his widow was substituted as plaintiff.
This matter came for trial on January 4, 1982. The amount of $105,407.97 was stipulated to as the amount paid out by Highlands on behalf of Larson pursuant to its policy of insurance with Bulk Transport, Inc.
On January 7, 1982, in answer to interrogatories, the jury found that Huskey was not negligent but that Drake was. The jury awarded total damages to plaintiff in the amount of $250,000.00. The judgment awarded interest to the plaintiff on the total amount of $250,000.00 and awarded Highlands its principal of $105,407.97 to be paid out of funds due plaintiff.
Highlands filed a Motion to Amend that portion of the judgment which awarded *772 plaintiff the interest on the amount due. The motion was denied.

NEGLIGENCE OF HUSKEY
We have concluded that the jury's finding of no negligence on Huskey's part was manifestly erroneous. He testified that as he began to back toward the hopper, he saw Larson talking to a Drake mechanic near the hopper, and as he began to back up, he assumed he was still there. It was established that he had full view of everything to the rear of his truck when he started backing at forty-five feet from the hopper, but as he got nearer, at some point there would be a blind spot extending from the middle of the truck's rear. It was further established that the rear view mirror on the right side of his truck enabled him to see everything, at least to the point of the truck's right rear fender. At some point Larson stepped from a concrete slab adjacent to the driveway leading to the hopper so that Huskey should have seen him until the point when he stepped off the slab.
If he failed to see him, at least to this point he was negligent. This negligence was compounded by the fact that once Larson got on the driveway, Huskey couldn't see him. Once he no longer saw Larson, Huskey should have known Larson was behind him and yet he continued to back in his direction. His reliance on the operation of flasher lights and a warning bell to give him a license to back up blindly under the circumstances was unjustified. There was present the distinct risk that Larson's back would be to him so that he would not see the flashers, and the noise in the area made the warning bell ineffective. Huskey's negligence consisted in his needlessly backing his truck without keeping a proper lookout or ascertaining that his path was clear. Guilbeau v. Liberty Mutual Insurance Company, 338 So.2d 600 (La.1976).

NEGLIGENCE OF DRAKE
As Huskey's employer, Drake is liable to plaintiff under C.C. art. 2320. As a result of this conclusion it is unnecessary for our purposes to discuss the jury's findings of Drake's negligence independent of Huskey's, but for the benefit of a reviewing court we do so.
At the time of the accident, Larson was watching the top of the silo for any discharge of cement, as required by Drake. In his deposition, he stated that he felt that in the position he was standing when struck, he was not in the way of any backing concrete trucks. He believed that any truck that wanted to back up to the silo had plenty of room to do so without hitting him. He further testified that he did not hear a warning bell on Huskey's truck prior to the truck striking him.
Appellants contend that the jury erred in finding Drake Concrete negligent in the operation of its plant, which negligence caused the accident. We find sufficient evidence in the record to support this verdict. There is testimony indicating that it was standard procedure for the bulk drivers to concentrate their attention on the top of the silo while unloading their trucks to assure that there would be no overflow or spillage of cement from the silo. In order for the driver to do this, he must stand adjacent to the area where the ready-mix trucks back up to obtain concrete.
There were no markings, railings or other devices to aid pedestrians in distinguishing between the driveway and a place of safety. Drake did not require a flagman or other person to assist in the backing of the trucks.
Because the drivers could not see directly behind the truck, the jury obviously found that precautions should have been taken by Drake Concrete to avoid any pedestrians being struck. Although the trucks were equipped with warning bells that sounded as they backed up, the record reflects that there was an abundance of noise at the site. The idling of trucks waiting to take on loads, compressors and conveyor belts used to operate the silo that were continuously operating, and the pumping of cement from the bulk driver's truck all contributed to a high degree of noise. Larson testified in his deposition that he did not in fact hear a bell and other witnesses supported this testimony. *773 All of these factors when considered together constitute an ample basis for the jury to have found Drake negligent in the operation of their plant causing an unreasonable risk to Larson.
Appellants argue that the rule of Baumgartner v. State Farm Mutual Automobile Insurance Company, 356 So.2d 400 (La.1978), denying a defense of plaintiff's negligence in a motorist-pedestrian accident on a public road is not applicable to operations on public property nor to the particular circumstances of this case. We disagree with appellant's argument.
Appellants cite Meaux v. Alexander, 405 So.2d 680 (La.App. 4th Cir.1981), writ denied, 410 So.2d 764 (La.1982) and Cenac v. Zurich Insurance Company, 397 So.2d 870 (La.App. 4th Cir.1981) to support their argument. Neither case, however, stands for this proposition.
The factual situation in Meaux, supra, is distinguishable from that in the instant case. A trailer, pulled by a tractor, became stuck on a bridge. A crane with a sling and shackles was used to pull the trailer from the "stuck" position. After the tractor-trailer became unstuck, but while the crane was still tied onto it, plaintiff crawled underneath the tractor to unhook the sling and shackles. While doing this, the tractor-trailer moved, causing the tires of the tractor-trailer to roll over Meaux's lower extremeties. The court found Baumgartner v. State Farm, supra, not applicable, because it did not involve a pedestrian situation, and found the plaintiff contributorily negligent.
Although the factual situation in Cenac, supra, is similar to the case at bar, it does not support appellant's argument.
The driver of a truck was backing his truck to unload sand at a construction site at the pedestrian worker's directions. He turned the truck's cab to the left to back his truck at the place indicated by the worker's hand signals, and as a result of the turn could no longer see him. The court held that he was not negligent in subsequently striking the worker, as the driver had the right to assume that the worker would anticipate the movement of the truck's cab during the turn and would move to keep out of the way.
In Oliver v. Capitano, 405 So.2d 1102 (La. App. 4th Cir.1981), writ denied, 407 So.2d 731 (La.1981), Baumgartner, supra, was held applicable to an accident in a vacant lot where a dump truck backed into an insane woman who was kneeling in the lot. The court stated:
"The fundamental duty-risk analysis of Baumgartner, like that of Boyer v. Johnson, La.1978, 360 So.2d 1164, and of Rue v. State Dept. Hwys., La.1979, 372 So.2d 1197, is applicable here. When a duty is imposed upon one person for the purpose of eliminating a risk of injury to a second person from the second person's own inattention, lack of skill, or negligence, the fact that the second person was inattentive, unskillful, or negligent cannot free the first person from responsibility for breach of the duty to protect against precisely the fault that occurred."
In Guilbeau v. Liberty Mutual Insurance Company, supra, the court stated at page 604:
"Under Louisiana jurisprudence, an operator of a vehicle or heavy equipment who observes, or who should by the exercise of reasonable care have observed, a pedestrian in a position of peril of which the latter is apparently unaware, is responsible for injuries caused when his vehicle strikes the pedestrian in his path, despite any contributory negligence on the part of the latter; providing that, after the duty to make such observation arose, the operator could reasonably have avoided the accident."
We have concluded that the defense of contributory negligence was unavailable in the action based on Huskey's negligence. Much of appellants' argument is based on the theory that Baumgartner and its progeny have no application to the action based on the independent negligence of Drake, but because of our conclusion as to Huskey's negligence we need not address the issue.

*774 INTEREST
Intervenor argues that the district court erred in denying the interest due on the principal amount owed to intervenor and awarding said interest to plaintiff.
Prior to trial all parties signed a stipulation which stated in pertinent part that:
"Bulk Transport, Inc., and Highlands Insurance Company are subrogated to the rights of Lindsay Larson and are entitled to be paid first out of any judgment or settlement returned in the above numbered and entitled cause in the amount of ONE HUNDRED FIVE THOUSAND FOUR HUNDRED SEVEN AND 97/100 ($105,407.97) DOLLARS."
The trial court is bound to render judgment in accordance with the stipulations of the parties where the stipulations were not in derogation of the law. General Investments Inc. v. Thomas, 400 So.2d 1081 (La.App. 4th Cir.1981).
Nonetheless, we note that intervenor prayed for legal interest due in their petition of intervention and the judgment itself makes intervenor a judgment creditor.
Intervenor is by law allowed interest; See Breaux v. Roy Young, 397 So.2d 1384 (La.3rd Cir.1981), and, a judgment creditor is due interest on a judgment. LSA-C.C.P. art. 1921.
Thus we conclude that legal interest should be awarded intervenor, Highlands Insurance Co., on the amount of the judgment in their favor. Nonetheless, we note from their brief, that apparently payments made by them for which they were entitled to reimbursement, were made prior and subsequent to judicial demand. As the record does not reveal which amounts were paid when, we cannot calculate when legal interest should apply.
However, under the rationale of Willis v. Stauffee Chemical Co., 349 So.2d 1390 (La. App. 3rd Cir.1977) and cases cited thereunder, rather than remand this case to the trial court, and in the interest of judicial economy, we amend the judgment to award legal interest on all amounts paid as of the date of judicial demand and legal interest on any amounts paid after legal demand, commencing from the date each payment was made until the judgment is paid.

QUANTUM
In the assessment of quantum of damages, much discretion is left to the trier of fact and such awards may be disturbed only if the record clearly reveals abuse of this much discretion. Ashworth v. Smith, 386 So.2d 1016 (La.App. 3rd Cir.1980). Our independent review of the record discloses that Mr. Larson suffered extremely severe injuries including a crushed and fractured pelvis, severance of his urethra, severe abdominal trauma, contusions of the small intestine and colon, subsequent drop foot on the left side, destruction of the hip joint, infection involving the right hip and infection involving the right hip joint. Until he died, Mr. Larson was unable to care for himself in any manner. He was in constant pain for the entire three year period from the date of his accident until his death.
Mr. Larson was never able to transport himself by any means and was thereby deprived of the ability to leave his home to attend church, participate in his carnival club's activities, which appeared to be one of his primary sources of relaxation, and enjoy the company of others.
Mr. Larson was never able to return to work nor was he ever able to engage in marital relations with his wife.
The trial judge, in awarding plaintiff $250,000, did so based on the jury's special verdicts of $82,000 for medical expenses, $45,000 for loss of income, and $123,000 for pain and suffering. The compensation carrier was awarded its $105,400 out of plaintiff's recovery so that her $250,000, when reduced by the $105,400 and the $45,000 for loss of wages, results in an award for general damages of less than $100,000. We conclude that this is so inadequate as to constitute a violation of the much discretion rule.
We apply the standard enunciated in Coco v. Winston Industries, Inc., 341 So.2d 332, p. 335 (La.1976):

*775 "that before a Court of Appeal can disturb an award made by a trial court that record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc., [304 So.2d 351 (La. 1974)], supra; Fox v. State Farm Mutual Automobile Ins. Co. [288 So.2d 42 (La. 1973)], supra; Walker v. Champion [288 So.2d 44 (La.1973)], supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry [302 So.2d 278 (La.1974)], supra; Spillers v. Montgomery Ward and Company, Inc., [294 So.2d 803 (La.1974)], supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
and further delineated in Reck v. Stevens, 373 So.2d 498 (La.1979);
"Only after such determination of abuse has been reached is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case."
This court finds that the lowest amount reasonably within its discretion to award is $250,000 for general damages or a total of $400,000.
For the above and foregoing reasons, the judgment of the trial court dismissing plaintiff's suit against Johnny L. Huskey is reversed and set aside. The judgment is amended by increasing the total award for all general and special damages to $400,000.
Accordingly, for the reasons expressed herein, IT IS ORDERED, ADJUDGED AND DECREED, that the judgment of the trial court in favor of intervenor, Highlands Insurance Company, against defendants in intervention, is hereby amended to include legal interest. Said interest is to run, a) on all amounts paid as of the date of judicial demand by Highlands from judicial demand until the judgment is paid; b) on all amounts paid subsequent to judicial demand from the date each payment was made until the judgment is paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Veronica Bordenave Larson and against the defendants, Johnny L. Huskey, Drake Concrete Company of Belle Chasse, Inc., and Sentry Insurance Company, jointly and in solido, in the sum of FOUR HUNDRED THOUSAND ($400,000) DOLLARS, plus interest from date of judicial demand until paid.
In all other respects the judgment of the trial court is affirmed. Costs of this appeal to be borne by appellants.
REVERSED IN PART AMENDED IN PART AND AFFIRMED.